# CHARLES T. WILDER, TAX ASSESSOR, *v.* JOHN F. COLBURN.

### ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

ARGUED OCTOBER 9, 1913.                    DECIDED OCTOBER 30, 1913.

### ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

OFFICERS—*de facto judge—collateral attack upon authority.*

Where a justice of the supreme court of this Territory, after the expiration of the term for which he was appointed, in good faith continues to act as a member of the court and to perform the duties of the office, and does so with the acquiescence of the department of justice, the other members of the court, the bar, and litigants, and no new appointment has been made and no other person claims the office, he is at least a *de facto* judge and his authority is not open to attack in a collateral proceeding.

COURTS—*stare decisis—practice.*

Where a question of practice arising under statute has once been definitely decided it should and generally will be regarded as settled.

TAXATION—*authority of assessor—action on judgment.*

Under section 1193 of the Revised Laws a tax assessor has authority to maintain an action upon a judgment obtained by his predecessor in office against a delinquent taxpayer.

CONSTITUTIONAL LAW—*due process of law—assessment of taxes.*

A statute which requires persons to make returns to the assessor of their taxable property upon notice so to do and provides that in case any person so notified shall refuse or neglect to file a return of his property the assessor may make an assessment thereon according to the best information within his reach which assessment shall be binding and conclusive upon all parties and shall not be subject to appeal, is not lacking in due process of law in so far as it affects one whose failure to make a return was due to contumacy or negligence.

### OPINION OF THE COURT BY ROBERTSON, C.J.

The tax assessor for the first taxation division brought action and recovered judgment against the plaintiff-in-error upon a declaration containing four counts. The first count was upon

a judgment alleged to have been recovered against the plaintiff-in-error by the predecessor in office of the present assessor. The second, third and fourth counts were for property taxes, personal taxes and income taxes respectively all of which were alleged to be due and unpaid. The plaintiff-in-error admits that judgment against him was properly had under the third and fourth counts but claims error as to the first and second.

Before the case was reached for argument in this court the plaintiff-in-error interposed an objection to Mr. Justice Perry sitting as a member of the court, the ground of objection being "that the appointment and commission of said Honorable Antonio Perry, as a Justice of this Honorable Court, expired, and became null and void on or about the 10th day of May, A. D. 1913, and that since said last mentioned date, said Honorable Antonio Perry has not been, and is not now, duly or legally qualified or entitled to sit or officiate as an Associate Justice, or as a member of this Honorable Court."

Justice Perry was commissioned on the 6th day of May 1909, by President Taft with the advice and consent of the Senate of the United States "for the term of four years commencing with the date hereof, subject to the provisions of law." Since May 6, 1913, he has in good faith continued to act as one of the members of this court and to perform the duties of the office as he had theretofore done. This has been with the acquiescence of the department of justice, the other members of this court, the bar, and litigants. No new appointment has been made and no other person claims the office.

After argument upon the objection it was dismissed. We held that Justice Perry is at least a *de facto* judge and that his authority could not be questioned collaterally in the manner attempted in this case. *Territory* v. *Mattoon,* ante, p. 672.

The defendant demurred to the complaint upon the ground, among others, of a misjoinder of causes of action in that an action based upon a judgment as sought to be set forth in the

first count was joined with counts for claims for unpaid taxes as set forth in the other counts.

In the case of *Harrison* v. *Magoon,* 13 Haw. 339, 358, it was held that an action on a judgment is, within the meaning of our statute (Civ. Laws, Sec. 1259; R. L. Sec. 1743), an action *ex contractu* on the promise, or contract implied by law to pay the amount of the judgment, and that a count upon a judgment may be joined with another upon contract express or implied. The plaintiff-in-error contends that a judgment is in no proper sense a contract or agreement between the parties, and claims that the case cited was wrongly decided. We are not disposed to consider the contention on its merits. The point presented is one of mere practice under the statute which should be regarded as settled, and we adhere to the ruling made in that case. A question of this kind having once been definitely decided, should and generally will be regarded as settled. 11 Cyc. 748; *Mosher* v. *Huwaldt,* 86 Neb. 686. In taking this position we are not to be understood as intimating that that ruling was not well founded.

One of the assignments of error raises the question whether the present assessor may maintain an action upon a judgment recovered against a delinquent taxpayer by his predecessor in office. Counsel for the plaintiff-in-error contends that there is no statutory authority for the proceeding and that as the rights of the assessor in the premises depend wholly upon statute the assessor cannot recover upon the first count. Section 1193 of the Revised Laws provides that "The successor of any assessor shall be invested with the same powers and be subject to the same duties and liabilities as his predecessor, and shall collect all taxes then unpaid, and shall carry on any proceedings commenced by his predecessor."

"Proceeding" in its general acceptation means "the form in which actions are to be brought and defended, the manner of intervening in suits, of conducting them, of opposing judgments and of executing" judgments. Bouv. Law. Dict.; *Erwin* v.

*United States,* 37 Fed. 470, 488; *Howell Lumber Co.* v. *New Brunswick,* 75 Atl. (N. J.) 750. The word is often used in a sense broader and less technical than "action." *In re Mc-Farland's Estate,* 10 Mont. 445, 455; *Mars* v. *Mining Co.,* 7 S. D. 605, 617; *In re Tillery,* 43 Kan. 188, 192. In *Maile* v. *Tax Assessor,* 18 Haw. 307, 311, the section quoted was held to authorize a tax assessor to take out an alias execution upon a judgment obtained by his predecessor in office. An action upon a judgment cannot be regarded as a continuation of the action in which the judgment was recovered. It is a new and distinct action. But with reference to the statute is it to be regarded as a new and different proceeding? The statute was designed among other things to enable assessors to carry on to their ultimate conclusion actions and proceedings for the recovery of unpaid taxes which were commenced by a predecessor. To this end a liberal construction of the language used is warranted. An action to recover unpaid taxes is a proceeding having for its object the collection of the amount due from the delinquent taxpayer and its payment into the public treasury. This object is not accomplished by the mere entry of a judgment. In a broad but unstrained sense the proceeding is not ended until satisfaction of the judgment has been obtained. Hence it is that an assessor may take out an execution upon a judgment secured by his predecessor, and hence it is, as we believe, the statute authorizes the maintenance of an action upon a judgment in the manner followed in the case at bar. Otherwise stated, the prior judgment not having been satisfied the proceeding is to be regarded as unfinished and the action upon that judgment as the carrying on of the proceeding in which it was obtained. The conclusion may appropriately be made to rest upon another ground. If, as will hardly be disputed, the assessor who obtained the judgment might, were he still in office, maintain an action upon that judgment, then the present assessor to whom the statute has given the "same powers" may likewise maintain such action.

The contention is also made under certain of the assignments of error that the system established for the assessment and collection of property taxes in this jurisdiction was so defective from a constitutional standpoint that no proceeding for the collection of assessed taxes may be maintained. The taxes for which claim was made under the second count were assessed against the defendant in the years 1893 and 1905 to 1908 inclusive. The judgment set up in the first count was alleged to have been recovered in 1905. The point sought to be made appears to be this: That prior to 1909, when the statute was amended, it was provided by section 1235 of the Revised Laws that in case any person should refuse or neglect to make a return of his property for taxation as required by law, or decline to take oath to the accuracy of his return, "the assessor may make such assessment according to the best information within his reach, and the same shall be binding and conclusive upon all parties, and shall not be subject to appeal." It has been held that the assessor may not act arbitrarily or capriciously, *In re Taxes, Bishop Estate,* 13 Haw. 671, 675; but that questions of valuation, the ·assessment having been properly made, are foreclosed when no return has been made, *In re Assessment of Taxes, Lam Wo Sing,* 15 Haw. 60; that the assessment of a whole tract of land to one who owned all but a small piece of it was valid, no return having been made, *Shaw v. Booth,* 14 Haw. 117; also that the taxpayer may show the illegality of an assessment upon property even though he made no return of the property, *Hilo Sugar Co.* v. *Tucker,* 8 Haw. 148.

Section 1242 of the Revised Laws, as it stood prior to its amendment in 1911, provided that "Each assessor shall at any time add to his assessment or tax list, any person or property theretofore omitted; notice thereof shall be given to the owner, if known, within ten days after such addition, " etc. This court has never been called upon to construe that section of the law, and its effect is not involved here.

It is argued that section 1235 authorizes and contemplates

the taking of private property without due process of law, and that the invalidity of the statute in this respect is such as to destroy the entire law with respect to property taxation.

The authority mainly relied on by counsel for the plaintiff-in-error is the case of *Central of Georgia Railway* v. *Wright,* 207 U. S. 127. In that case certain shares of corporate stock owned by the plaintiff-in-error had not been assessed to it upon the understanding which appears to have been entertained by both the state officials and the railway company that they were not taxable; eventually the supreme court of the United States held that such shares were taxable; thereupon the comptroller-general of Georgia, after calling the attention of the president of the railway company to the decision of the supreme court and asking for data with reference to the value of the stock in question, and after receiving certain information in reply, assessed the company upon the stock according to the best information obtainable as to its value. The suit was to enjoin the collection of the tax so assessed. In its opinion the court pointed out that the statute of Georgia provided that in cases of failure to make return of taxable property the comptroller-general shall make an assessment from the best information he can procure which assessment shall be conclusive upon the taxpayer and an execution may at once be had for the amount of the tax together with the costs and penalties; also that the supreme court of Georgia had held that when a person fails to make a return in whole or in part he becomes a defaulter, whether he acted fraudulently or through honest mistake and in the utmost good faith, and the opportunity is closed to him so far as adjusting the assessment is concerned. The supreme court held that the procedure did not constitute due process of law. But the facts in that case differed from those in this and the question discussed and decided by the court in that case was a different one from that presented here, as the following excerpts from the opinion will show. The court said, "In view of this statute as thus construed the question made is, whether

due process of law is afforded where a taxpayer, without fraudu-
lent intent and upon reasonable grounds withholds property
from tax returns with an honest belief that it is not taxable,
and the assessing officer proceeds to assess the omitted property
without opportunity to the taxpayer to be heard upon the valid-
ity of the tax or the amount of the assessment, either in the tax
proceedings or afterward upon a suit to collect taxes, or by inde-
pendent suit to enjoin their collection." 207 U. S. 136. "The
record discloses that for many years this class of property was
not regarded as taxable in Georgia, and was not returned for
taxation in the State. But it is contended that the taxpayer
stands in the attitude of one acting contumaciously, and denying
the validity of the tax after this court had practically decided
its validity against the plaintiff in error in *Wright* v. *Railroad
Co.,* 195 U. S. 219. * * * * We must decide the case in view
of its relations to a taxpayer not fraudulently concealing his
property and honestly contending, with reasonable grounds for
the contention, that it is not taxable under the laws of the
State. As we have seen, the system provided in Georgia by
the statutes of the State as construed by its highest court re-
quires of the taxpayer that he return all his property, whether
its liability is fairly contestable or not, upon pain of an *ex parte*
valuation, against which. there is no relief in the tax proceed-
ings or in the courts, except in those cases where fraud or cor-
ruption can be shown in the action of the assessing officer."
Id. 141.

In the case in hand the record shows that the defendant made
returns of his property for the years 1905, 1906 and 1907.
Apparently he made no returns for the years 1893 and 1908
in which years, presumably, the assessor made the assessments
fairly and according to the best information within his reach.
No claim to the contrary is made. It does not appear, nor is
it of consequence, whether the defendant in failing to make
returns in those two years was contumacious or merely negli-
gent, but there is no suggestion that in so doing he was "hon-

708 SUPREME COURT OF HAWAII.

Wilder v. Colburn, 21 Haw. 701.

estly contending with reasonable grounds for the contention"
that his property was not taxable, or that he had any good rea-
son for not making returns. The plaintiff-in-error here, there-
fore, is not in the position of the plaintiff-in-error in *Central
of Georgia Railway* v. *Wright*. His rights not being affected
by what the law may be in case a person fails to make return
under circumstances like those appearing in that case it is un-
necessary to go into the question whether under such circum-
stances the procedure prescribed by our statute is lacking in due
process of law. A question of the alleged conflict of a statutory
provision with the constitution will not be considered at the suit
of one whose rights appear not to be affected by such provision.
*Turpin* v. *Lemon*, 187 U. S. 51, 60; *Grenada Lumber Co.* v.
*Mississippi*, 217 U. S. 433, 442; *In re Craig*, 20 Haw. 483,
490.

However, the plaintiff-in-error is in a position to urge that
the provisions of section 1235 of the Revised Laws were lacking
in due process of law in that the section submitted to the
"doom" of the assessor persons who have negligently failed or
contumaciously refused to return their property for taxation
after notice so to do as required by other sections of the statute.

In Cooley on Taxation (2nd. ed.) 358, it is said "The right
to discriminate in some manner against those who fail to hand
in lists has often been judicially recognized. When the dis-
crimination consists merely in submitting the party to the
'doom' of the assessor, and depriving him of any appeal, it would
seem that there could be no valid objection to it." The Massa-
chusetts system is similar to ours so far as the point involved
is concerned and its constitutionality has been upheld not only
by the courts of that State but by the supreme court of the
United States. There the statute provided that the assessors
"shall ascertain as nearly as possible the particulars of the per-
sonal estate, and of the real estate in possession or occupation,
as owner or otherwise, of any person who has not brought in
such list, and shall estimate its just value, according to their

best information and belief." (R. L. Mass. Ch. 12, Sec. 47) "Such estimate shall be entered in the valuation book, and, except as provided in sections forty-one and seventy-four, shall be conclusive upon any person who has not seasonably brought in a list of his estate, unless he can show a reasonable excuse for the omission." (Id. Sec. 48) "A person shall not have an abatement, except as otherwise provided, unless he has brought in to the assessors the list of his estate as required by section forty-one." (Id. Sec. 74) The validity of these provisions was questioned in the case of *Harrington* v. *Glidden,* 179 Mass. 486, where the court said (p. 495) "The defendant's brief contains an elaborate argument in support of the proposition that our statutes relating to the assessment of taxes are unconstitutional because they do not give the party assessed an opportunity to be heard. But he does have full opportunity to be heard before the assessing board, if he desires it, before the demand becomes conclusively established against him, and that is enough." The case was affirmed in *Glidden* v. *Harrington,* 189 U. S. 255. And the ruling was reiterated in *Sears* v. *Assessors,* 208 Mass. 208, 211, where the case of *Central of Georgia Railway* v. *Wright* was cited and distinguished. Under the Massachusetts act a person failing to make a return may apply for an abatement of the assessment if he is able to show a reasonable excuse for the omission, but as to obdurate or negligent persons the law is the same there as in this jurisdiction. By failing to take advantage of the opportunity after notice to render their returns such persons place themselves in a position where, though they may defend against an attempt to collect the tax by showing its illegality, they are foreclosed as to the question of valuation. This would seem to be reasonable, and we have found no decision of the supreme court of the United States which holds or intimates that such a provision is obnoxious to the Fourteenth Amendment of the Constitution. The contention of the plaintiff-in-error is not sustained.

Judgment affirmed.

*C. W. Ashford* for plaintiff-in-error.

*L. P. Scott, Deputy Attorney General (Wade Warren Thayer, Attorney General,* with him on the brief), for defendant-in-error.