*Smith & Parsons* for plaintiff.

*J. M. Vivas* and *C. C. Bitting* for defendant.

---

IN RE ASSESSMENT OF TAXES, HAWAII LAND COM-
PANY, Ltd.

APPEAL FROM TAX APPEAL COURT, HONOLULU.

SUBMITTED DECEMBER 2, 1901.  DECIDED DECEMBER 10, 1901.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A low valuation is placed upon an ordinary lease of a small tract of land made only a few months before the date of assessment, there being no evidence that the rent reserved was less than the rental value or that the land had since increased in value.

The combined values of the lessor's and the lessee's interests may, according to the circumstances, be greater or less than or equal to the value that the land would have if it were not subject to the lease.

OPINION OF THE COURT BY FREAR, C.J.

Appeal by the Tax Assessor from the valuation of a lease-hold interest. The lease covers $3\frac{1}{2}$ acres of land at Palama on

the mauka side of King street on the town side of the Hawaiian
Tramways Company's stables in Honolulu. It was made in 1900
for 21 years at a rental of $550 a year. The tenant spent $7,000
in improvements on the land, chiefly in the erection of a building
for stores and lodging rooms. The property was returned at
$8,000, being $1,000 for the leasehold and $7,000 for the im-
provements. The assessor raised this to $17,500, but the Tax
Appeal Court sustained the return.

This appeal is taken in order to determine the method of
ascertaining the value of a leasehold interest. The assessor
contends that the values of the lessor's and the lessee's interests
together make up the total value of the land, and that the way
to ascertain the value of the lessee's interest is to deduct the
value of the lessor's interest from the total value of the land;
that the value of the land in question, at $4,400 an acre, is
$16,400, that the value of the lessor's interest, by the eight
year rental rule, is $4,400, and that therefore the value of the
lessee's interest is $12,000, besides the value of the improve-
ments, $7,000, or a total of $19,000, whereas the assessment
was only $17,500, or $1,500 too low, as contended by the
assessor.

No doubt the values of the lessor's and the lessee's interests
together make up the total value of the land, but this is not
always the same as the value that the land would have if it were
not subject to the lease. For instance, if the reserved rent
were less than the rental value and the unexpired term
of the lease were too short to justify the lessee's making such
improvements as ought to be made in order to obtain the great-
est profit, the combined interests would together be of less value
than the land would be if it were unincumbered by the lease,
while if the unexpired term were for a long period at a higher
than the market rental and the lessee were a responsible person,
the combined values would be greater than the value of the
land would be if there were no lease. In the present case we
may assume that these combined values approximately equal
that of the land alone without the lease. But it is not satis-

factorily shown either that the value of the land without the lease would be $16,400 or that the value of the lessor's interest is only $4,400. The latter sum is obtained by applying the eight year rental rule (8x$550); the former is obtained from the statement of the assessor, not as a witness and without reasons, that the land is worth $4,400 an acre. One or the other of these estimates is apparently erroneous. Perhaps both are. If the lessor (the Bishop Estate) obtained less than the rental value, the eight year rental rule would not apply, for it would be "manifestly unfair and unjust"; if it obtained a fair rental but if the application of the eight year rule resulted in too low a valuation of the lessor's interest, that would be no reason why the lessee's interest should be overvalued. There is no rule requiring lessees to pay what their lessors escape. It would be as reasonable or unreasonable to first estimate the value of the lessee's interest (in this case, say $1,000) and then deduct it from the supposed value of the land (in this instance put at $16,400) in order to ascertain the value of the lessor's interest as to pursue the reverse process in order to ascertain the value of the lessee's interest. Each interest should be assessed at its own cash value. A consideration of the value of the land and of each interest may, however, throw much light on the value of the other interest.

This lease was made only a few months before the date of the assessment. Apparently it was made as a matter of business and between parties who were familiar with land values. Presumably they bargained for a fair rental. There is no evidence that they made the rental too low or that the land has since increased in value. Under such circumstances to value the lessee's interest at $12,000 and the lessor's interest at only $4,400, would be absurd. One or the other or both estimates would obviously be incorrect. If those figures were correct the lessor made a ridiculous blunder and for a nominal consideration exchanged an interest worth $16,400 for an interest worth only $4,400 while the lessee acquired an interest that had an immediate cash value of $12,000. The only direct evidence tending to

show the value of the lessee's interest is the testimony that the rents paid by subtenants from March, 1900, to March, 1901, after an expenditure by the lessee of $7,000 in improvements, amounted to $1,218 or only $668 more than the rent payable by the lessee, not to mention other expenses. A lease of this sort would have, aside from the improvements, comparatively little value just after it was made unless a mistake were made or there was a change in the value of the property.

The valuation of $8,000 by the Tax Appeal Court is affirmed.

*Robertson & Wilder* for the assessor.

*Achi & Johnson* for the tax-payer.